UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

      v.                                  1:06-CR-494-DNH

MARK DESNOYERS,

              Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| DREYER BOYAJIAN LLP<br>Attorneys for Defendant<br>75 Columbia Street<br>Albany, New York 12210 | WILLIAM J. DREYER, ESQ.<br>JOHN B. CASEY, ESQ. |
| HON. ANDREW T. BAXTER<br>Office of the United States Attorney<br>Attorneys for the United States of America<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | CRAIG A. BENEDICT, ESQ.,<br>Assistant United States Attorney<br>COLIN L. BLACK, ESQ.,<br>United States Department of Justice |
| HON. DAVID N. HURD<br>United States District Judge | |

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Defendant Mark Desnoyers ("defendant") moves pursuant to Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal, or alternatively, pursuant to Federal Rule of Criminal Procedure 33 for a new trial for each of the charges of which he was convicted. The United States of America (the "Government") opposes.

Oral argument was heard on February 12, 2009 in Utica, New York. Decision was reserved.

## II.  BACKGROUND

Defendant was convicted on September 18, 2008 of the following offenses for his conduct while working as an asbestos abatement air monitor: <u>count one</u>: conspiracy to violate the Clean Air Act and to commit mail fraud; <u>count five</u>: knowingly violating the Clean Air Act; <u>count six</u>: knowingly committing mail fraud; and <u>counts twelve</u> and <u>thirteen</u>: knowingly making material false statements to Special Agents of the United States Environmental Protection Agency ("EPA").  <u>Count fourteen</u> of the Third Superseding Indictment (the "Indictment") also charged defendant with making a material false statement to EPA agents, but defendant was acquitted of that charge at trial.  All remaining counts were redacted from the Indictment following the guilty pleas of defendant's co-defendants, John Wood and Curtis Collins.  Accordingly, only <u>counts one</u>, <u>five</u>, <u>six</u>, <u>twelve</u>, and <u>thirteen</u> are at issue.

## III.  DISCUSSION

### A.  Defendant's Motion for a Judgment of Acquittal

A motion for a judgment of acquittal will be granted if, after viewing all of the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the required elements of each offense were proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Although the Government is not required to negate every theory of innocence, <u>United States v. Autuori</u>, 212 F.3d 105, 114 (2d Cir. 2000), equal or nearly equal levels of circumstantial evidence supporting theories of guilt and of innocence cannot support a conviction as the jury must then have contemplated a reasonable doubt. <u>See</u> <u>United States v. Glenn</u>, 312 F.3d 58, 70 (2d Cir. 2002) (quoting <u>United States v. Lopez</u>, 74 F.3d 575, 577 (5th Cir. 1996)).

### 1. <u>Count One: The Multi-Objective Conspiracy</u>

Count one of the Indictment charged defendant with conspiring to violate the Clean Air Act, 42 U.S.C. §§ 7412(b) and (h) and 7413(c)(1), and the mail fraud statute, 18 U.S.C. § 1341, during the course of eight individual asbestos abatement projects.  These projects were identified in count one as: (1) the Alexander Residence; (2) the Menustik Residence; (3) Citizens Bank; (4) the Town of Mooers Public Library; (5) the Kerr Residence; (6) the Owens Residence; (7) a non-residential building at 69 Clinton Street in Plattsburgh, New York (hereinafter "69 Clinton Street"); and (8) the Page Residence.

Defendant first argues that the Government failed to prove at trial that the residential projects listed in count one were subject to the Clean Air Act.  Second, he argues that the Government likewise failed to prove that the non-residential projects listed in count one either contained regulated asbestos material or that the projects were not within a limited exception to the Clean Air Act created by applicable New York State Code Rule 56.  Third, defendant challenges the sufficiency of the evidence concerning the mail fraud offense. Finally, he argues that acquittal is warranted because count one asserts violations of the Clean Air Act and the mail fraud statute as the criminal objectives of the conspiracy charge. According to defendant, there is no way of knowing whether some jurors were prejudiced by evidence of Clean Air Act violations related to projects that were exempt from the Clean Air Act or if the jury unanimously determined beyond a reasonable doubt that he unlawfully conspired to commit mail fraud.

The Government conceded at oral argument that, of all the projects identified in count one, only the 69 Clinton Street project was subject to the Clean Air Act. <u>See</u> Oral Argument Tr. for Feb. 12, 2009.  According to the Government, the other seven projects

were pertinent only to the mail fraud objective of the conspiracy charge.  Defendant contends there was insufficient evidence at trial to prove that the 69 Clinton Street project did not fall under a limited exception established by applicable Industrial Code Rule 56 of Title 12 of the New York Codes, Rules, and Regulations ("Code Rule 56").  Pursuant to Code Rule 56, there is a limited exception from the code's work practices when the project "involves encapsulation, enclosure, removal, disturbance or handling of less than 160 square feet or 260 linear feet of asbestos or asbestos material . . . ." 12 N.Y.C.R.R. pt. 56, Ex. A. to Def's. Post-Trial Mot. (Def's. Trial Ex. 26), Dkt. No. 155-3, 19.

The only evidence that the 69 Clinton Street project did not fall within the limited exception created under Code Rule 56 was testimony that the project was "large."  In contrast to testimony relating to the linear footage of other projects, none of the Government's witnesses testified as to the linear footage of the 69 Clinton Street project. The testimony that the 69 Clinton Street project was a "large" project is insufficient to prove beyond a reasonable doubt that it did not fall within the limited exception created under Code Rule 56 because the witnesses' opinions as to what constitutes a "large" project could obviously still fall short of the rule's footage requirements.  Therefore, since none of the projects identified in count one were subject to the Clean Air Act, the part of count one which alleged a conspiracy to violate the Clean Air Act was incapable of being proven as a matter of law.

Notwithstanding that issue, the Government argues that it needed only to prove one of the criminal objectives of the multi-objective conspiracy charge. The Government contends that, even if the conspiracy to violate the Clean Air Act was unproven because none of the projects listed in count one of the Indictment were subject to the Act's

requirements, defendant's conviction under count one should nonetheless stand because there was sufficient evidence for the jury to conclude that he conspired to commit mail fraud.

A conviction for a multi-objective conspiracy will normally be upheld so long as there was sufficient evidence at trial to prove the defendant agreed to accomplish at least one of the criminal objectives. United States v. Bilzerian, 926 F.2d 1285, 1302 (2d Cir. 1991) (citing United States v. Papadakis, 510 F.2d 287, 297 (2d Cir.), cert. denied, 421 U.S. 950, 95 S. Ct. 1682 (1975)).  However, an exception to this rule was created for when "an overwhelming amount of evidence relevant only to the unproved part of the conspiracy may have prejudiced the jury." Papadakis, 510 F.2d at 297.

At trial, the jury heard extensive testimony of improper asbestos abatement procedures with respect to each of the eight projects identified in count one.  EPA Special Agent Justice Derx and both of defendant's alleged co-conspirators testified in detail as to the inadequate asbestos removal performed for the projects.  The testimony described their insufficient time spent at the project sites, dry removal of asbestos material, the presence of asbestos material left behind after work was completed, improper disposal of removed asbestos material, and inaccurate designation of the size of the projects.  Although the criminal objective to violate the Clean Air Act was incapable of being proven, the Government's evidence, in large part, consisted of acts that would have constituted violations of the Clean Air Act had the statute applied to the projects identified in count one.  Given the lengthy descriptions of improper asbestos removal practices, the evidence related to the alleged conspiracy to use the mail to defraud defendant's clients was overshadowed by evidence of would-be Clean Air Act violations.

While the multi-objective conspiracy charged in count one, standing alone, may not have necessarily resulted in unfair prejudice, the Government's opening statement and closing argument unacceptably exacerbated the potential for the jury to confuse the factual issues.  In particular, the Government's remarks misled the jury to believe that all of the projects identified in count one were subject to the requirements of the Clean Air Act.  In the beginning of its opening statement, the Government immediately explained that "[t]he first count contains a whole series of projects . . . once you find that a conspiracy has existed, we need to prove an overt act, one overt act.  We are going to prove a bunch of them, but we only have to prove one."  See Government's Opening Statement, Trial Tr. for Sept. 9, 2008.

Notably, the only two types of overt acts listed in count one are alleged violations of the Clean Air Act and the mail fraud statute.  The Government's statement therefore gave the impression that it would satisfy its burden with respect to the "whole series of projects" in count one so long as it proved defendant conspired to either violate the Clean Air Act or commit mail fraud.  However, in light of the Government's concession that the Clean Air Act did not apply to seven of the eight projects in count one, it was necessarily impossible for defendant to have conspired to violate the Clean Air Act with respect to the "whole series of projects."  Even under the Government's theory, it could only prove such a conspiracy with respect to one of the projects.[1]  As a result, the only legally possible criminal objective was to commit mail fraud, yet the jury was led to believe otherwise both by the Government's statements and the wealth of evidence suggesting defendant was not in compliance with the Clean Air Act.

---

[1] As noted above, the Government failed to prove that even that one project was subject to the Clean Air Act.

Despite the Government's belief to the contrary, this inaccurate message was continuously communicated to the jury.[2]  For example, later in its opening statement the Government discussed what it identified as "standard things in the industry."  Id.  The Government described proper air monitoring procedures and explained that "this is something that is absolutely required."  Id.  However, the Government's post-trial admission that the Clean Air Act did not apply to seven of the eight projects begs the question: under what statute were such procedures "absolutely required?"  Count one charged defendant with conspiring to violate either the Clean Air Act or the mail fraud statute, and nothing in the mail fraud statute is related to proper asbestos removal procedures.  See 18 U.S.C. § 1341.  Instead, the only logical conclusion was the misleading belief that defendant's conduct with respect to all of the projects listed in count one fell within the purview of the Clean Air Act.

Throughout the trial, the Government, for whatever reason, discussed each project as it related to possible violations of the Clean Air Act instead of focusing upon defendant's alleged use of mailings in violation of the mail fraud statute.  For example, when discussing the Kerr Residence with the jury, the Government stated that defendant was "responsible for making sure, among other things, that OSHA personals are taken." Government's Opening Statement, Trial Tr. for Sept. 9, 2008.  The Government then immediately argued to the jury: "Well, certainly there were no OSHA personals taken on this project."  Id.  The unavoidable result was that the jury was led to believe the Government could satisfy its burden of proof so

---

[2] When asked at oral argument to defend its decision to charge the multi-objective conspiracy in count despite the potential for juror confusion, the Government stated: "[T]he United States never argued that the Clean Air Act applied to certain of these locations, and so that shouldn't be a difficulty at all.  We were very clear in explaining what was Code Rule 56 and what was the Clean Air Act." Oral Argument Tr. for Feb. 12, 2009.  However, as explained infra, the Government's statements to the jury at trial belie its contention that it never argued the Clean Air Act applied to the projects identified in count one.

long as it showed defendant conspired to violate the Clean Air Act on any one of the eight projects.

Perhaps more than any other statement, one of the Government's remarks during its closing argument demonstrates the misleading nature of count one and the corresponding high potential for juror confusion.  Shortly before finishing its closing argument, the Government stated to the jury:

> Ladies and gentlemen, we have alleged in count one a Clean Air Act and a mail fraud conspiracy.  Now, in this particular case, there are Clean Ar Act violations, overt acts.  There are mail fraud overt acts. And the fact of the matter is, if you find a conspiracy, and you only need find one overt act having been committed. Each of the projects list multiple overt acts, and you need only find one.

Government's Closing Argument, Trial Tr. for Sept. 18, 2009.  This statement, in the clearest of terms possible, argues to the jury that the Government will have satisfied its burden of proof if it proved that defendant conspired to violate the Clean Air Act with respect to any one of the projects listed in count one.

Also significant is the Government's failure to differentiate between the two criminal objectives.  Although the Government acted within its discretion to charge a multi-objective conspiracy within a single count of the Indictment, not once did the Government state to the jury that the Clean Air Act did not apply to seven of the eight projects identified in count one. Instead, this significant distinction was not conceded until after trial during oral argument of defendant's post-trial motions.  Consequently, the jury was led to believe that all of the projects in count one were subject to the statutory requirements for asbestos removal provided for in the Clean Air Act.  If deliberate, the Government's decision to charge the two criminal objectives under a single count represents a serious abuse of prosecutorial discretion.  Even if inadvertent, however, the substantial potential for juror confusion and

prejudice remained.  Also, defense counsel was delinquent in not raising this objection until after trial.  This argument should have been made beforehand.

In any event, the jury considered an overwhelming amount of evidence that suggested defendant conspired to commit a legally impossible crime, i.e., the conspiracy to violate the Clean Air Act.  As a matter of law, the criminal objective to violate the Clean Air Act was incapable of being proven because none of the projects listed in count one were within the ambit of the Act's requirements.  Defendant was therefore subject to a substantial risk of unfair prejudice because some, if not all, of the jurors may have inferred from the extensive evidence of improper asbestos abatement procedures that he conspired to violate the Clean Air Act.  Alternatively, but equally problematic, some jurors may have inferred that defendant committed mail fraud only after being improperly persuaded by the evidence of defendant's alleged non-compliance with the Clean Air Act.  Therefore, the Government cannot rely upon the rule in Papadakis as support for its argument that it needed to prove only a single objective of the multi-objective conspiracy in count one.  To the contrary, there was too great a risk that the jury improperly considered evidence suggesting defendant committed an overt act in furtherance of the unproven part of the conspiracy, and accordingly, defendant's motion for acquittal of count one will be granted.

## 2.  Count Five: Aiding and Abetting Violations of the Clean Air Act

Defendant challenges the sufficiency of the evidence for his conviction under count five of the Indictment.  In support of his position, defendant argues that the Government affirmatively withheld the testimony of Roger Moran because Mr. Moran would have contradicted the accounts of the Government's other witnesses.  Additionally, defendant

argues that there was no proof he was aware that the project listed in count five met the threshold footage requirement of 260 linear feet.

Defendant's speculation as to what Mr. Moran would have testified to is unavailing. The Government was not obligated to call to the stand each of the witnesses it identified before trial, and defendant was free to call Mr. Moran to testify during his case-in-chief. Although Mr. Moran was a victim of defendant's alleged offenses, defendant could have sought to cross-examine Mr. Moran as a hostile witness pursuant to Federal Rule of Evidence 611(c).  Moreover, at trial, Bob Marshall and one of defendant's co-defendants, Curtis Collins, testified as to how defendant aided in their illegal work practices with respect to the project listed in count five.  Both witnesses also testified that the linear footage of the piping for the project exceeded 260 feet.  Viewing the evidence, as opposed to defendant's assumptions of what Mr. Moran would have stated at trial, in the light most favorable to the Government, defendant's conviction under count five must be upheld because the testimony of Mr. Marshall and Mr. Collins allowed the jury to infer that defendant knowingly aided his co-defendants' violations of the Clean Air Act.  Therefore, defendant's motion for acquittal of count five will be denied.

### 3.  Count Six: Mail Fraud

Count six of the Indictment charged defendant with committing mail fraud with respect to the asbestos abatement project performed at the High Peaks Hospice in Port Henry, New York.  Defendant challenges his conviction on the grounds that New York State Code Rule 56 does not apply to air monitors such as himself, and alternatively, that the obligations under Code Rule 56 were too ambiguous for the jury to conclude beyond a reasonable doubt that he committed mail fraud.

At trial, Mr. Collins testified as to his own illegal practices, including the leaving behind of asbestos after he had completed the abatement projects.  He then testified that, despite his own incomplete removal of the asbestos at the High Peaks Hospice, defendant's air sampling results indicated the project site was safely cleared of asbestos material.  Mr. Collins explained that he did not observe defendant present at the site during the times defendant claimed he ran air sampling.  Most importantly, Mr. Collins testified that defendant's fraudulent air samples were sent through the mail.  His testimony as to the illegitimacy of the air sampling results was also supported by photographic evidence of asbestos that was left behind at the project site after defendant had conducted his air samples.

Viewed in the light most favorable to the Government, such evidence allows for the inference that defendant used the mail to fraudulently misrepresent compliance with the applicable work practice standards in violation of the mail fraud statute.  In particular, the evidence indicating that defendant used the mail to send fraudulent air samples is sufficient to uphold his conviction under count six.  Whether defendant's conduct as an air monitor was governed by Code Rule 56 is irrelevant because he is charged in count six with using the mail to further the scheme to defraud the owner of the High Peaks Hospice.  Accordingly, defendant may be convicted of mail fraud solely on the basis that he sent the fraudulent air samples through the mail as part of the plan to misrepresent the adequacy of Mr. Collins's performance when supposedly removing asbestos from the site.

Finally, defendant offers no discussion for how Code Rule 56 is too ambiguous to uphold his conviction. <u>See</u> Def's. Mem. of Law in Supp. of Post-Trial Motions, Dkt. No. 155-7, 10.  Instead, his memorandum of law includes only the conclusory statement that he must be

acquitted of count six because of the "ambiguous nature of former Code Rule 56." Id. Additionally, defendant raised this argument before trial, see Def's. Mem. of Law in Supp. of Pretrial Motions, Dkt. No. 102-12, 15-17, and it was rejected. See Order, Dkt. No. 112. Without more to support his argument, defendant's motion for acquittal of count six will be denied.

### 4. Counts Twelve and Thirteen: Material False Statements Made to a Federal Agent

Counts twelve and thirteen of the Indictment charged defendant with making material false statements to Special Agents of the EPA in violation of 18 U.S.C. § 1001 ("§ 1001"). Specifically, count twelve pertained to the Alexander Residence project and charged defendant with falsely stating that (1) full containment had been constructed at the project; (2) he conducted an inspection of the project site before conducting final air sampling; (3) he in fact conducted proper final air monitoring; and (4) asbestos had been removed from the piping so that the pipes were clean and shiny. See Third Superseding Indictment, Dkt. No. 79, 24-25. Count thirteen related to the Town of Mooers Public Library project and charged defendant with falsely stating that he did not have reason to know that the roofing shingles at the project contained asbestos. See id. at 25.

Defendant raises several arguments in support of his motion for acquittal of both counts: (1) that any statements he made relative to either project were not within the jurisdiction of the EPA because both projects were exempt from the Clean Air Act; (2) that there was no testimony at trial as to the content of the statements alleged in the Indictment; (3) that there was insufficient evidence to conclude that the statements were false; and (4)

with respect to the Town of Mooers Public Library only, the alleged statement was not material.

The Government's response is limited to its position that defendant's arguments were already rejected prior to trial.  <u>See</u> Government's Resp. in Opp'n Mem. of Law, Dkt. No. 159, 19.  Defendant did make the same argument before trial as to the immateriality of the alleged statement relating to the Town of Mooers Public Library, <u>see</u> Def's. Mem. of Law in Supp. Mot. to Dismiss, Dkt. No. 102-12, 19, and his argument was rejected following oral argument on July 16, 2008.  <u>See</u> Order, Dkt. No. 112, 2.  Defendant's immateriality argument will be rejected again for the same reasons.  However, defendant's other arguments have not been previously considered.  <u>Compare</u> Def's. Mem. of Law in Supp. Mot. to Dismiss, Dkt. No. 102-12, <u>with</u> Def's. Mem. of Law in Supp. of Post-Trial Motions, Dkt. No. 155-7, 11-12.[3]

### a. Matters Within the Jurisdiction of the Federal Government

In order to be convicted under § 1001, the Government must prove that a defendant knowingly and willfully made a materially false statement related to a matter within the jurisdiction of an agency of one of the branches of the federal government. 18 U.S.C. § 1001(a).  As admitted by the Government at oral argument, the Alexander Residence and Town of Mooers Public Library projects listed in counts twelve and thirteen, respectively, are not covered by the Clean Air Act.  Nevertheless, the term "jurisdiction" as used in § 1001 "should not be given a narrow or technical meaning." <u>United States v. Rodgers</u>, 466 U.S. 475, 480, 104 S. Ct. 1942, 1946 (1984) (citations omitted).  Rather, "an agency has jurisdiction

---

[3] The Government's response to defendant's arguments related to counts twelve and thirteen is wholly inadequate, <u>see</u> Resp. Mem. of Law in Opp'n, Dkt. No. 160, 19, and the Government erroneously relies upon its arguments made before trial.  In particular, it is difficult to understand how, as the Government contends, defendant could have argued <i>prior to trial</i> that there was no testimony <i>at trial</i> that he made the statements alleged in counts twelve and thirteen of the Indictment.

within the meaning of [§ 1001] when it has authority to act upon the information," <u>Bilzerian</u>, 926 F.2d at 1300 (citing <u>Rodgers</u>, 466 U.S. at 479-80, 104 S. Ct. at 1946).  Moreover, criminal investigations conducted by federal law enforcement agencies will qualify as "a matter" within the federal jurisdiction of the executive branch. <u>See</u> <u>Rodgers</u>, 466 U.S. at 479, 104 S. Ct. at 1946.

At the time the statements were made, the Government was determining what charges, if any, to bring against defendant, including the conspiracy to commit mail fraud charge in count one and the substantive mail fraud charge in count six.  As already discussed, the non-applicability of the Clean Air Act to various asbestos abatement projects does not preclude defendant's conviction for mail fraud.  It then follows that the Government's investigation of defendant relating to projects not falling under the Clean Air Act is nonetheless within the jurisdiction of the federal government because law enforcement officials were investigating whether defendant had committed mail fraud or other federal offenses.  Therefore, defendant is not entitled to a judgment of acquittal for counts twelve and thirteen on the ground that the Clean Air Act did not apply to the Alexander Residence and Town of Mooers Public Library projects.

### b. **Evidence of Defendant's False Statements**

Defendant alternatively argues that he should be acquitted of counts twelve and thirteen because there was no testimony that he made any of the statements charged in the Indictment, and alternatively, that there was insufficient evidence to prove beyond a reasonable doubt that such statements were false.

At trial, EPA Special Agent Justice Derx testified as to the statements charged in counts twelve and thirteen of the Indictment. With respect to the Alexander Residence

project, Agent Derx testified that on December 5, 2006, defendant made the following the statements: (1) that he had conducted a thorough inspection of the basement area prior to starting his final air sampling; (2) that he did not observe any asbestos left behind and that the pipes in the basement were clean and shiny; (3) that the pipes had been oiled; and (4) that the pipes were fully contained from asbestos when he first arrived at the project site.  In relation to the Town of Mooers Public Library project, Agent Derx testified on direct that defendant stated that his co-defendant, John Wood, told him the project involved asbestos removal from only "the flashing."  Agent Derx then testified again during cross-examination that defendant stated that Mr. Wood had told him it was "only the flashing that's asbestos, not the rest of the roof shingles."

        The testimony of Agent Derx provided sufficient evidence for the jury to conclude that defendant made the statements alleged in counts twelve and thirteen of the Indictment. Viewing the evidence in the light most favorable to the Government, the jury was free to determine that Agent Derx was a more credible witness than defendant.  Additionally, the extensive testimony from Mr. Wood and Mr. Collins describing the improper asbestos practices performed at the Alexander Residence and Town of Mooers Public Library projects provided a basis for the jury to conclude the statements alleged in the Indictment were in fact false.  Also supporting this determination was the testimony of Agent Derx describing his observations of the project sites in question, as well as an analysis of one of the roofing shingles from the Town of Mooers Library project indicating the shingle contained asbestos. For all of these reasons, the weight of the evidence supports the jury's determination that defendant knowingly made false statements to EPA agents, and accordingly, defendant's motion for acquittal of counts twelve and thirteen will be denied.

**B.  Defendant's Motion for a New Trial**

Defendant alternatively moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.  A defendant may be granted a new trial if the interest of justice so requires. FED. R. CRIM. P. 33(a).  While district courts are granted considerable discretion to decide Rule 33 motions, including evaluating for itself the weight of the evidence and the credibility of the witnesses, see Untied States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (citations omitted), courts must also be careful not to "wholly usurp the jury's role." Robinson, 430 F.3d at 543 (quoting Autuori, 212 F.3d at 120).  Instead, only the most exceptional circumstances will allow judges to "intrude upon the jury function of credibility assessment." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

Defendant asserts a number of arguments for why allowing his convictions to stand would result in manifest injustice.  First, he argues that the Government failed to disclose Agent Derx's or Agent Dwyer's notes composed during his interviews on October 24, 2006 and December 5, 2006.  Second, he contends he was denied a fair trial as a result of the Government's references to victims and their injuries during its opening statement and closing argument.  Third, defendant claims the Government improperly withheld impeachment material as to Mr. Wood's arrest for grand larceny in September of 2008.  Fourth, he maintains that his request for a jury charge of a good faith defense should have been granted.  Fifth, he argues that it was improper not to instruct the jury as to the relevance of the character evidence admitted at trial.  Sixth, he contends he was unfairly prejudiced by the Government's improper cross-examination as to his involvement with Len Doughty.  Seventh, defendant asserts that the Government contravened the evidentiary ruling as to the admissibility of his marijuana use.  Eighth, he challenges the inadmissibility of his air sampling

equipment for the purpose of demonstrating how he obtained his air samples.  Finally, although not raised until his reply, he argues that Agent Derx offered improper conclusions as to the ultimate issue to be decided by the jury.

### 1.  Disclosure of the Agents' Contemporaneous Notes

Defendant contends that the Government's failure to turn over the notes taken by Agent Derx and another member of the EPA when he was interviewed on October 24 and December 5 of 2006 inhibited his defense and violated Federal Rule of Criminal Procedure 16.  He argues that these notes contained exculpatory material related to Counts twelve and thirteen (false statement counts) and could have corroborated his account of the conversations with the EPA agents.

Pursuant to Rule16, "*[u]pon a defendant's request*, the government must disclose to the defendant . . . the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent . . . ." FED. R. CRIM. P. 16(a)(1)(B)(ii) (emphasis added).  After the amendment to Rule 16 in 1991, the Government must provide defendants with contemporaneous notes of interviews and may not avoid this obligation by providing mere summaries of the interviews prepared from the contemporaneous notes. See United States v. Stein, 424 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2006) (discussing the change in Rule 16 after the amendment and collecting cases).  Despite this heightened obligation, however, defendant is still required to make a request for such material. See FED. R. CRIM. P. 16(a)(1)(B)(ii).

It is undisputed that defendant did not request disclosure of the contemporaneous notes prior to trial.  Nevertheless, defendant argues that he was not required to make a

request for the contemporaneous notes because the Government was required to disclose such material pursuant to a pre-trial discovery order.  Although defendant does not provide a citation to a pre-trial order in his memorandum of law, page six of the criminal pre-trial scheduling order does direct the Government to make available for inspection and copying "[a]ll discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure . . . ." Criminal Pre-trial Scheduling Order, Dkt. No. 21, 6.

Defendant's argument is unpersuasive because the pre-trial order does not contravene defendant's obligation to request the information pursuant to Rule 16(a).  Rather, the pre-trial order only directs disclosure of Rule 16(a) material.  Defendant's argument is somewhat circular because to qualify as rule 16(a) material, the material must have been requested by defendant.  Therefore, the Government's failure to provide defendant with the contemporaneous notes of his interview does not warrant a new trial.

## 2. The Government's Opening Statement and Closing Argument

Defendant next argues that the Government's repeated references to the property owner victims and their injuries during its opening statement and closing argument served to unfairly inflame the prejudices of the jury.  Specifically, he objects to the Government's mentioning of $30,000 to $70,000 worth of damage despite the lack of testimony from any homeowner during trial as to the damages they incurred.

During its opening statement, the Government referred to the damages suffered by various property owners and stated its intent to elicit their testimony during its case-in-chief. However, during the direct examination of one of the property owners, defendant's objection to a question asking about the property damage was sustained.  The Government therefore had a good faith basis prior to defendant's successful objection for referring to the property

damage in its opening statement.  Additionally, the reference to the property damage was not

so inflammatory as to unfairly prejudice the jury, and in any event, the property owners'

experiences were relevant to showing that they were deceived for purposes of the mail fraud

charges.  Therefore, the reference to the property owner victims during the Government's

opening statement and closing argument does not warrant a new trial.

### 3.  Disclosure of Impeachment Material for Mr. Wood

Defendant next argues that the Government improperly withheld impeachment

material of his alleged co-conspirator and accomplice, Mr. Wood.  Defendant learned through

a newspaper article published on or about September 23, 2008, that Mr. Wood was arrested

for grand larceny shortly after the trial had concluded. See Ex. D. to Casey Aff., Dkt. No. 155-

6.  Defendant contends that Mr. Wood's criminal conduct would have served to significantly

impeach his credibility because the alleged offense occurred at about the same time as he

entered his plea agreement in August of 2008.

Significantly, defendant does not contend that the Government was aware of Mr.

Wood's grand larceny arrest prior to the conclusion of the trial. Additionally, the failure to

disclose such information does not rise to the level of manifest injustice given the likely

minimal effect of such information upon the jury's determination of Mr. Wood's credibility.  At

trial, the jury heard of Mr. Wood's lengthy pattern of dishonesty and illegal behavior, yet the

jury nonetheless credited his testimony over that of the defendant.  Accordingly, the non-

disclosure of Mr. Wood's arrest for grand larceny does not justify a new trial.

### 4.  The Request for a Good Faith Defense Jury Charge

Defendant also moves for a new trial on the grounds that his request for a jury

charge of a good faith defense should have been granted.  He argues that the Government

was required to disprove his good faith defense with respect to all of the counts containing a specific intent element, i.e., the conspiracy charge, the mail fraud charge, and the false statements to a federal agent charges.  Defendant's argument is limited to his contention that he was deprived a fair trial because the phrase, "good faith," was not included anywhere in the instructions to the jury.  See Def's. Mem. of Law, Dkt. No. 155-7, 15.

Even if pursuing a good faith defense, however, a defendant is not necessarily entitled to the words "good faith" within the jury charge. See United States v. McElroy, 910 F.2d 1016, 1025-26 (2d Cir. 1990).  A jury charge will be adequate so long as the jury is instructed on the necessary elements of each offense to the extent that the essence of the good faith defense instruction has been provided, regardless of whether the words "good faith" appear within the instructions. See id.; see also United States v. Doyle, 130 F.3d 523, 540-41 (2d Cir. 1997).

The jury charge instructed the jury to consider whether defendant "knowingly and willfully joined the conspiracy," and in other words asked the jurors, "[d]id he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?" See Court's Ex. 2, 25.  The jury charge also explained that "[a] person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness." Id.  Finally, the jury charge defined "willfully" as "to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.  A defendant's conduct was not 'willful' if it was due to negligence, inadvertence, or mistake." Id. at 26.

Although the charge did not include the words "good faith," the essence of defendant's good faith defense was presented to the jury. Quite clearly, the jury was instructed to determine whether defendant acted knowingly and willfully, and further explanations of these mental states were provided. Therefore, the lack of the words "good faith" in the jury charge does not warrant a new trial.

### 5.  The Request for a Character Evidence Instruction

Defendant alternatively argues that he was denied a fair trial because the absence of a jury instruction explaining the relevance of character evidence led the jury to conclude that character testimony provided by one of his witnesses, Gary Murphy, was unimportant and should be rejected. Mr. Murphy was defendant's supervisor at the Office of Mental Retardation and Developmental Disabilities and testified at trial as to defendant's character trait for truthfulness.

Defendant's argument that the jury "was left to conclude that the testimony was irrelevant or should be rejected" goes too far. Significantly, the jury was instructed that its verdict "must be based upon all of the evidence presented," including all of the testimony. Id. at 7. Although "jury instructions must not give character evidence an inferior status," United States v. Pujana-Mena, 949 F.2d 24, 29 (2d Cir. 1991), nothing requires that the jury be instructed to give special consideration to evidence of the defendant's character. Id; see also United States v. Burke, 781 F.2d 1234, 1241 (7th Cir. 1985) (holding that character evidence does not necessarily warrant "any particular instruction"). Therefore, the decision not to include a more specific instruction regarding the significance of character evidence was not manifest injustice and does not require a new trial.

### 6.  Evidence of Defendant's Relationship with Len Doughty

Defendant also argues that a new trial is warranted because he was cross-examined as to his involvement with Len Doughty.  According to defendant, the Assistant United States Attorney, Craig Benedict, became an unsworn witness when asking him about his relationship with Doughty because the jury inferred that Mr. Benedict had personal knowledge of Doughty's illegal behavior.  Defendant maintains that the Government's cross-examination implied defendant was aware of Doughty's imprisonment for participating in a prostitution ring in Canada; that he knew Doughty had engaged in fraudulent air sampling; that he was aware Doughty had been offered government immunity in another case; and that he was fired from his job with the Arc of Clinton County–a rehabilitation center for developmentally disabled individuals–due to his involvement in a Medicaid scam.  Essentially, defendant argues that the Government's cross-examination related to these topics improperly caused the jury to believe that he had previously engaged in illegal activity unrelated to the charges within the Indictment.

During defendant's direct examination, however, defendant testified at length about his business relationship with Mr. Doughty.  He explained that he entered the air monitoring industry after being approached by Mr. Doughty, and more importantly, that Mr. Doughty provided him instruction for how to conduct his air monitoring.  Defendant testified that he worked on a number of large air monitoring jobs together with Mr. Doughty and that he "got a lot more training from him than [he] did from [his] classes."  His direct testimony therefore opened the door for cross-examination regarding his knowledge of Mr. Doughty's illegal behavior, including fraudulent air monitoring.

As for the cross-examination related to defendant's prior employment with the Arc of Clinton County, defendant likewise opened the door to this line of questioning during his direct testimony.  Defendant testified on direct about his activities as Director of Residential Services at the Arc, including his account of why he left the organization following an audit by New York State for suspicion of Medicaid fraud.  According to defendant, he resigned from the position in November of 2001 following his refusal to fraudulently sign documents at the request of the Arc's Executive Director.  The Government objected at the beginning of defendant's testimony concerning his employment history, but the objection was overruled and defendant was permitted to provide evidence of his background to the jury.  In light of defendant's testimony about his work for the Arc and his reasons for resigning, any subsequent cross-examination as to whether defendant resigned or was in fact terminated from the organization was within the scope of his direct examination and also relevant as to defendant's credibility.  Accordingly, defendant is not entitled to a new trial as a result of the Government's cross-examination about either his relationship with Len Doughty or his resignation from the Arc of Clinton County.

### 7.  Evidence of Defendant's Marijuana Use

Defendant maintains that the Government contravened the pretrial ruling concerning his alleged use of marijuana.  Pursuant to a pre-trial ruling, testimony regarding marijuana use would be admissible only if the evidence demonstrated that defendant was smoking marijuana when he should have been engaged in air monitoring activities.  Defendant takes issue with the Government's efforts to elicit testimony from Mr. Collins that defendant was paid for his involvement in the conspiracy with marijuana, and he argues that

the Government should have given notice of its intention to admit such testimony in light of the pre-trial ruling.

At trial, the Government asked Mr. Collins what he paid defendant for his air monitoring work at the High Peaks Hospice project.  Mr. Collins responded that he paid defendant "a couple hundred dollars, and I gave him half a bag of pot."  The Government then asked Mr. Collins if there were any other exchanges of marijuana with defendant, to which Mr. Collins indicated the two men smoked marijuana at the project site identified in count five of the Indictment–the Da'Vida project in Oneonta, New York.  During cross-examination, defendant's counsel repeatedly asked Mr. Collins about his marijuana use and his payment of marijuana to defendant.

Defendant's argument is unpersuasive in light of his failure to object to the Government's questioning and his attorney's statements during his opening statement that he was not paid to conduct fraudulent air sampling.  Mr. Collins's testimony properly served to rebut defendant's position that he was not paid as part of a scheme to defraud the owner of the High Peaks Hospice, and the testimony was also admissible as evidence that defendant smoked marijuana while at one of the project sites.  Moreover, defendant took the opportunity to cross-examine Mr. Collins somewhat extensively about his marijuana use and to discredit his account of the marijuana payment.  Therefore, the Government's evidence of defendant's marijuana use and his payment in the form of marijuana did not unfairly prejudice the jury and does not entitle defendant to a new trial.

### 8.  The Inadmissibility of the Air Sampling Equipment

Defendant claims that he was improperly precluded from demonstrating to the jury how his air sampling equipment functioned.  He argues that this ruling was in error because

the Government's entire case focused upon how, when, and in what manner he conducted his air sampling, including whether it was possible to conduct air sampling at various jobs simultaneously with the use of timers.  Defendant sought to show to the jury his timing devices in an effort to explain how it was possible for him to conduct air monitoring at multiple project sites during the same time periods.  Although the Government's objection was sustained on the grounds that the timing devices were not provided during reciprocal discovery, defendant argues that he sought only to use the timers for demonstrative purposes rather than offer it into evidence, and even so, that the timers were offered to Agent Derx during his interview of defendant on October 24, 2006.

The Government's primary objection to the evidence at trial was that it had never been provided notice of defendant's intention to admit physical evidence of his timers. The Government emphasized that its position was the same regardless of whether defendant sought to admit the timers into evidence or to display them to the jury as demonstrative exhibits because, in either case, the Government was unprepared to rebut the defense associated with use of the timers.

In consideration of the failure to disclose the timers during reciprocal discovery, coupled with defendant's intention to only use the timers as demonstrative exhibits as opposed to offering the timers into evidence, the Government's motion to preclude the display of the timers during defendant's testimony was granted.  However, the resulting prejudice to defendant, if any, was mitigated by two subsequent rulings. First, defendant was expressly permitted to testify as to his use of the timers and to explain to the jury that the timers enabled him to conduct simultaneous air sampling at multiple abatement projects without having to be physically present at the sites themselves.  Second, defendant was permitted to

show one of his timers to the jury during cross-examination of one of the Government's rebuttal witnesses, thereby demonstrating to the jury how his timers functioned.  Defendant was therefore given two opportunities to present evidence of his timers to the jury notwithstanding his failure to disclose such evidence to the Government before trial, and accordingly, the preclusion of the timers does not justify a new trial.

### 9.  Agent Derx's Testimony

Defendant belatedly in his reply makes several challenges to the admissibility of Agent Derx's testimony.  He first contends that Agent Derx improperly based his conclusions upon his own credibility determinations of Mr. Wood and Mr. Collins.  His argument follows that Agent Derx has no basis for determining that he violated any of the applicable federal or state work practice standards for air monitors without necessarily accepting as true Mr. Wood's and Mr. Collins's account of what happened.  Second, he argues that Agent Derx repeatedly misinterpreted the applicable Code Rule 56 and erroneously testified that his conduct was in violation of the rule.  For example, Agent Derx testified that defendant violated Code Rule 56 by failing to inspect the project sites prior to running final air clearance samples, yet, according to defendant, Code Rule 56 does not require air monitors to inspect a project site prior to running final air clearance samples.  See Def's. Reply Mem. of Law, Dkt. No. 162, 8 (citing Ex. A to Casey Aff., Dkt. 155-3, 54 (providing the requirements for pre-abatement and post-abatement clearance air monitoring)).  Finally, defendant argues that the Government was required to call a witness from the New York State Department of Labor who could have discussed the requirements of air monitors under Code Rule 56 rather than offer legal conclusions as to violations of the rule.

At trial, the Government elicited foundational testimony of Agent Derx's background and experience related to compliance with the Clean Air Act and other work practice standards for asbestos removal prior to any opinion testimony concerning the inadequacy of the asbestos abatement and air monitoring performed by defendant and his co-defendants. Defendant was free to object to Agent Derx's testimony as beyond the scope of either his personal knowledge or expertise.  Additionally, Agent Derx's opinions were not necessarily based upon his determination that Mr. Collins and Mr. Wood were telling the truth.  Instead, Agent Derx explained that he made observations of the project sites, submitted samples of material to laboratories for asbestos analysis, and conducted interviews of a number of witnesses, including the property owners.  In light of Agent Derx's investigation, defendant's citation to United States v. Scop, 846 F.2d 135 (2d Cir. 1988) is unpersuasive.  The expert witness in Scop "purported to base his testimony not on information obtained from his four-year investigation, but solely on the testimony and documentary evidence introduced *at trial*." 846 F.2d at 138 (emphasis added).  In that case, the Second Circuit took issue with the expert witness's testimony because he opined as to the specific elements of the charged offenses and usurped the jury's role of determining the credibility of the Government's witnesses.  In contrast, Agent Derx based his testimony on the products of his investigation and his experience as a Special Agent for the EPA, and, unlike with the expert in Scop, there is no argument that Agent Derx used statutory terms during his testimony to help convince the jury of defendant's guilt. See id. at 142.

Defendant's arguments as to Agent Derx's opinions related to the alleged violations of Code Rule 56 go to the weight of his testimony rather than its admissibility.  Defendant speculates that an employee from the New York State Department of Labor would have

testified differently, but more than speculation is needed to show manifest injustice for purposes of a Rule 33 motion for a new trial. Defendant could have argued as to the inadequacies of Agent Derx's opinions at trial, let alone objected to his testimony, and defendant was likewise free to present his own evidence and make his own arguments in support of his contention that Code Rule 56 was never violated. Therefore, defendant's motion for a new trial will be denied.

## IV. <u>CONCLUSION</u>

Defendant's motion for a judgment of acquittal pursuant to Rule 29(c) will be granted for the conspiracy charge because of the risk of unfair prejudice resulting from the multiple criminal objectives charged in count one. Although the Government is typically only required to prove one objective of a multi-objective conspiracy, the danger of unfair prejudice was too high given the likelihood that the jury improperly believed that all of the projects listed in count one were subject to the Clean Air Act. The Government's post-trial concession that the Clean Air Act did not apply to seven of the eight projects identified in count one raises serious questions for why violating the Clean Air Act was charged as an objective of the conspiracy as opposed to being charged in a separate count altogether.

As discussed, the Government's comments to the jury during its opening statement and closing argument aggravated the potential for juror confusion and unfair prejudice. On several occasions, the Government led the jury to believe that the Clean Air Act applied to all of the projects in count one, and the Government frequently stated that it would satisfy its burden of proof so long as it proved one of the overt acts charged in count one. At no point until oral argument for defendant's post-trial motions did the Government state that the Clean Air Act did not apply to seven of the eight projects in count one. Defendant's conviction under

count one is tainted because there is no way of knowing whether the jury found him guilty of conspiring to commit a crime that was legally impossible.

Defendant's convictions under the remaining counts must stand because, viewing the evidence in the light most favorable to the Government, there was sufficient evidence for a rational jury to conclude each element of each offense was proven beyond a reasonable doubt. The testimony of defendant's co-defendants, in conjunction with the testimony of Agent Derx and the physical and photographic evidence presented by the Government, all served to show that defendant aided his co-defendants' violations of the Clean Air Act, used the mail to defraud property owners, and made material false statements to Special Agents of the EPA.

Defendant's motion for a new trial pursuant to Rule 33 must be denied because none of his arguments support a determination that his conviction resulted in manifest injustice.  With respect to the disclosure of the EPA Agents' contemporaneous notes, there was no Rule 16 violation because defendant never requested the material.  As for his arguments in regard to the Government's conduct at trial, none of the testimony elicited or statements made during the opening statement deprived defendant of a fair trial.  The Government either had good faith bases for its conduct or defendant opened the door to various lines of questioning during his direct testimony and his attorney's opening statement. Defendant's complaints related to the jury charge are equally unpersuasive because the jury was instructed on the Government's burden to prove the required mental states and told that they should consider all of the evidence, including the testimony of all witnesses.  Finally, the preclusion of defendant's timing devices does not warrant a new trial because defendant was nevertheless permitted to testify as to how the devices enabled him to conduct simultaneous

air samples at different project sites, and one of his timers was subsequently shown to the jury during cross-examination of the Government's rebuttal witness.

Therefore, it is

ORDERED that

(1) Defendant's motion for a judgment of acquittal of <u>count one</u> of the Indictment is GRANTED;

(2) The jury's verdict of guilty for <u>count one</u> of the Indictment is VACATED;

(3) <u>Count one</u> of the Indictment is DISMISSED;

(4) Defendant's motion for a judgment of acquittal of <u>count five</u>, <u>count six</u>, <u>count twelve</u>, and <u>count thirteen</u> of the Indictment is DENIED; and

(5) Defendant's motion for a new trial is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 19, 2009
        Utica, New York